## LITTON v. RICHARDSON et al.

### No. 5778.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1939.

Rehearing Denied March 8, 1939.

Writ of Certiorari Denied May 1, 1939.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Gist & Thornton, of Alexandria, for appellees.

HAMITER, Judge.

Death resulted to plaintiff's twenty-year old son and to her husband in a motor vehicle accident that occurred during the latter part of the morning of September 7, 1937, on the Jefferson highway in Grant Parish, Louisiana. The machines involved were a Chevrolet truck with attached trailer, the combination of which we shall hereinafter refer to as a truck, owned jointly by the said son and husband, and a Dodge sedan belonging to and driven by C. J. Richardson, a resident of the State of Florida. The truck was operated at the time by the son, while plaintiff's husband sat beside him.

A policy of liability insurance written in the State of Florida by the General

Accident, Fire & Life Assurance Corporation, Ltd., covered and affected the sedan.

Plaintiff contends that the deaths were caused solely by the fault and negligence of Richardson, and she instituted two suits against him and the insurer of his car. In addition to charging said driver with numerous acts of negligence, she specifically pleads that he had the last clear chance to avoid the accident. In this case, she asks a solidary judgment in her favor, individually and as natural tutrix for her remaining minor children, awarding damages for the death of the husband. In the companion cause, 188 So. 442, she asks damages in her own behalf for the loss of the son.

The insurer excepted to the petitions. It contends that Act No. 55 of the Louisiana Legislature of 1930 is inapplicable to the insurance contract which was written in the State of Florida for the non-resident defendant Richardson, and, therefore, plaintiff has no right to institute direct actions against it. The exceptions were overruled.

Defendants answered admitting that decedents were killed in the accident involving the two machines and that the sedan was covered by a public liability insurance contract issued by said insurer, but asserting that said insurance contract limited the coverage "to $5000.00 for each person damaged as the result of the operation of the automobile covered, and with an absolute limit of the liability in any one accident of $10,000.00 for personal injury". They further aver that "said defendant Richardson was in no manner guilty of any act of negligence which was in any manner the proximate cause of said accident or the death of the said Littons", and that the occurrence resulted solely from the gross negligence of said father and son. Contributory negligence of both decedents is pleaded in the alternative.

At the commencement of the trial it was agreed by counsel that, "the two causes be consolidated for the purpose of trial, but separate judgments be rendered in each suit, and transcription serve for both suits on appeal."

The district judge rejected the demands of plaintiff in both cases. She appealed from the judgments.

The aforementioned exceptions of the insurer are urged in this court. We deem it unnecessary to, and do not, consider them because of the conclusions we have reached on the merits of the causes.

The accident occurred on a straight, level stretch or portion of the Jefferson highway at a point approximately five miles northwest of Colfax, Louisiana. The roadway there runs in a north and south direction and consists of a concrete slab eighteen feet in width. The customary black line designates its center. Dirt shoulders covered with grass and being from six to eight feet wide, join and parallel the concrete on both sides.

Plaintiff's husband and son departed from their home in Alexandria, Louisiana, on the morning of the accident with the purpose and view of delivering to an oil mill in Natchitoches, Louisiana, the five or six tons of cotton seed which their truck contained. The son was driving. The overall length of the vehicle was thirty feet. Its bed was twenty feet long, six and one-half feet wide, and about four feet high.

On the previous morning defendant Richardson began a journey from Pensacola, Florida, his domicile, to Shreveport, Louisiana. Accompanying him were his daughter, who resided in the last named city, and her three children. The members of the party spent the night in Baton Rouge and resumed the trip the following morning. They traveled along the Jefferson highway, through Alexandria and Colfax, and came in sight of the truck of the decedents which was also proceeding in a northerly direction. Richardson noticed it when within one-fourth or one-half of a mile away. The sedan was traveling at a speed of 45 or 50 miles an hour, while that of the truck was slightly less. Both machines occupied the east or right traffic lane.

When within 60 or 75 feet of the truck, Richardson pulled to the left of the highway and, on observing no traffic or other obstructions ahead, sounded his horn and proceeded to pass the overtaken vehicle. The front of his sedan had traveled about ten feet past the rear end of the lead machine when the latter was suddenly steered by its operator across the black medial line and into the left or west traffic lane. No signal or warning of the driver's intention to make such maneuver was given.

The truck was swerved to the left to permit the avoiding of a dead hog that was.

lying crosswise of the right traffic lane. It weighed about 125 pounds and, according to a witness offered by plaintiff, "it was about this (indicates three feet measuring with his hands) much room from the hog's head to the black line". The animal was hidden from Richardson's view at all times by reason of the large cotton seed filled truck.

The appearance of the truck in his path of travel prompted, or perhaps caused, Richardson to drive the sedan off the concrete onto the left shoulder, after which he accelerated its speed. This shoulder was wet and slippery due to a recent rain, and was filled with holes caused by the activities of hogs. After the vehicle had bumped along the dirt surface a distance of approximately 174 feet, during which portion of the trip the daughter and grandchildren were screaming, and on the driver's noticing an unusually large hole in the shoulder ahead of him, it was steered back onto the concrete. Momentarily thereafter, its right rear fender came in contact with the left front portion of the truck. Thereupon both vehicles headed in the direction of the ditch on the right or east side. The truck continued its course and came to rest therein. Plaintiff's son and husband were killed as the bed and and its contents slid forward on them. The sedan swerved to the left, traveled along the right shoulder a short distance, cut back to the west side of the highway and turned. It stopped on the concrete facing in a southerly direction.

■ The operator of the truck was undoubtedly negligent in his driving. There was a clear violation on his part of Rule 10(a) of Section 3 of Act No. 21 of 1932, which reads: "The driver of any vehicle upon a public road, highway or bridge of this State, before starting, stopping or *turning from a direct line* shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement." (Italics ours).

The trial judge correctly found that the truck driver, "deliberately made the left hand turn, coming far over into the left hand lane all of a sudden and without giving any warning whatever". Obviously, before attempting the turn, he made no effort to determine if it could be safely made. If he had looked, he would have observed the sedan overtaking him and preparing to pass on his left; and he had plenty of time, after the offending object became plainly visible to him, to either permit the safe passing of that vehicle by the slowing or stopping of the truck, or to give sufficient warning of his intended swerving. The obstruction ahead did not suddenly appear there. The hog had been killed by another motorist and had preempted the road for some time. Quoting further from the trial judge's opinion: "The road was straight and there was nothing to obstruct the forward vision of the driver of the Litton truck for a distance of at least one-fourth of a mile. If the truck driver had kept a diligent watch for obstructions in the road, he would have been able to have seen and ascertained that the road was obstructed by a hog on his side and that it would be necessary for him to turn to his left. He could have determined this object at least for one-eighth of a mile before reaching the place of obstruction."

According to our findings, there was no negligence on the part of Richardson. He was driving his car at a speed not reprobated by the laws of this state under existing circumstances. Before attempting his passage, he pulled to the left and surveyed the road ahead. No object appeared on the highway within the range of his vision except the Litton truck. Thereupon an audible warning signal was given by means of his horn and he proceeded forward, traveling on the left side. As we view the situation, he performed every act that was legally required of him.

Of course if he had actually seen the dead animal ahead of the truck before attempting to pass, or if, by the exercise of due diligence, he could and should have had knowledge of its presence there, our conclusions would no doubt be different than those herein expressed. We agree with the following statement found in the brief of plaintiff's counsel: "The court's attention is called at this point to the fact that the defendant, Richardson, never did at any time see the hog lying in the road and thus obstructing the right traffic lane. If he had seen the hog it would have been obvious to him that the truck must turn out to go around the hog. In such case, instead of rushing on down the

442

shoulder of the road he could have stopped or at least slowed down."

But such is not the case here. As before stated, he was afforded no opportunity because' of the huge truck that preceded him to become informed of the existence of the obstruction that prompted the swerving of the truck.

 It is urged by plaintiff's counsel that Richardson had the last clear chance to avoid the accident, even if it be found that the truck driver was negligent in changing his course on the highway; and that his failure in that respect renders him liable. The argument advanced is that on being confronted with the truck in the left traffic lane he could have slowed his car, by removing his foot from the accelerator, and dropped back into proper position; and that this course should have been pursued rather than continuing along the shoulder at an increased speed and cutting back in front of the other machine. Under the facts and circumstances of the controversy, we think the doctrine invoked has no application here. Both machines were traveling at a relatively fast rate of speed; Richardson was in the act of passing and had negotiated about ten feet of the truck's length when he was suddenly and unexpectedly forced onto the slippery and rough dirt shoulder; and the daughter and grandchildren were screaming. The time that elapsed from the beginning of his forced turning to his regaining of the highway was less than three seconds. This factual situation discloses that he was faced with a grave emergency which he did not contribute to or create, and certainly one not of his choice. A motorist placed in a predicament of this kind is not expected to exercise the same calm judgment as the one who has a reasonable opportunity to deliberate before acting. Cases in the jurisprudence of this state announcing such principle of law are legion. Thus, if Richardson performed the wrong maneuver in his endeavor to avoid the collision and injury to all concerned, particularly to himself and loved ones, he is not to be adjudged negligent and held liable. This is likewise applicable to his failure to continue farther along the shoulder and over the large hole before turning back onto the concrete.

The several cases cited and relied on by plaintiff are not controlling of the instant controversy. They are distinguishable in that therein the respective drivers of the rear machines were chargeable with knowledge, either actual or constructive, of the obstruction responsible for the turning of the lead vehicles. Such knowledge, as we have hereinabove stated, was not enjoyed by Richardson.

It is, therefore, our opinion that the tragedy forming the basis of this litigation was solely and proximately caused by the gross negligence of the driver of the Litton truck, and that the rejection of plaintiff's demands by the trial judge was correct.

The judgment is affirmed.